NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                         |   |                          |
|-------------------------|---|--------------------------|
| ASHLEY GEORGES,         | : | Civil No. 07-5576 (JAP)  |
|                         | : |                          |
| Plaintiff,              | : |                          |
|                         | : |                          |
| v.                      | : | **OPINION**              |
|                         | : |                          |
| MICHELLE R. RICCI, et al., | : |                       |
|                         | : |                          |
| Defendants.             | : |                          |

**APPEARANCES:**

> ASHLEY GEORGES, #429230, Plaintiff Pro Se
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625-0861

**Joel A. Pisano, District Judge.**

Plaintiff ASHLEY GEORGES (hereinafter "Plaintiff"),[1] a prisoner incarcerated at New Jersey State Prison (hereinafter "NJSP"), submitted to the Clerk for filing a civil rights complaint (hereinafter "Complaint") and application to proceed in forma pauperis.  Having thoroughly reviewed Plaintiff's allegations and the application to proceed in forma pauperis, as required by 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), this Court will allow him to proceed in this action in forma pauperis

---

[1] Plaintiff Ashley Georges is also known under aliases Jordan Antoine, Antoine George, Antonio George, Antwan George, Antoine Georges, Alexander Hyppolito and Joseph Joseph.  See <<https://www6.state.nj.us/DOC Inmate/details?x=1020404&n=0>>.

and dismiss certain Plaintiff's claims with prejudice, while granting him leave to amend his other claims.

I.  **BACKGROUND**

Plaintiff alleges violation of his constitutional rights by: (1) George W. Hayman, Commissioner of the New Jersey Department of Corrections; (2) Michelle Ricci, in her previous capacity as an associate administrator of NJSP; (3) Alford Kendall, assistant superintendent at NJSP; and (4) Messrs. Magginis, Harrison and "John Doe," investigators at NJSP.  Plaintiff asserts the following facts, which this Court is required to regard as true for the purposes of this review.  See Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir. 2007) (citing Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)).

Plaintiff alleges that, on February 28, 2007, he was "strip search[ed,] . . . remov[ed] from his cell [into a segregated housing] unit [(hereinafter "SHU")] and placed on Temporary Closed Custody ([hereinafter] "TCC") status."  Compl. at 2. Although Plaintiff was released from SHU the next day, that is, on March 1, 2007, he was: (1) re-strip searched and returned to the SHU on March 3, 2007; and (2) "remained on TCC until . . . June 4, 2007," that is, for 92 full days.[2]  See id.

_____

[2]

Plaintiff adds to these 92 days the day of his "placement on TCC," as well as the day of his "release from TCC" to arrive to the total period of 94 days.  See Compl. at 2.  The Complaint does not
(continued...)

Plaintiff alleges that the conditions of his confinement at the SHU caused him to "suffer[] extreme hardship."  See id.  The Complaint clarifies Plaintiff's understanding of the term "extreme hardship" by stating that, until April 25, 2007, "Plaintiff was not granted a complete overnight bag [i.e., he] was not supplied with basic necessities such as shower shoes, lotion, vaseline, shampoo and other necessary items to properly bathe."  See id. at 3, 5-6.  In addition to the aforesaid deprivations, the Complaint states that, during his SHU period, "Plaintiff was . . . deprived of religious services and materials, daily change of clothing and bed sheets, laundry, . . . visits from family members, phone calls to family members, [or] postage to write to family members."  See id. at 3.

Furthermore, Plaintiff alleges that, during his SHU period, he "had an active post-conviction relief matter, in which he made repeated attempts to request[] legal assistance [from NJSP

_____

[2](...continued)
clarify whether Plaintiff's "TCC status" over this period indicates that Plaintiff was housed at the SHU during that period.  See generally, Compl.  Moreover, the Complaint provides contradictory statements, suggesting that Plaintiff was in SHU during the entire period (by alleging that the bulk of his conditions of confinement was uniform during the entire period), see id. at 7, yet simultaneously suggesting a distinction between his "TCC status" and his SHU confinement (by seeking damages for each day he spent on TCC status **or** in the SHU detention).  See id.  Giving Plaintiff's Complaint the benefit of the doubt, the Court presumes that Plaintiff intended to allege that he was both on TCC status and in SHU confinement during the entire 92-day period and, thus, examines the Complaint accordingly.

paralegals][3] and legal calls [to] his [post-conviction relief]
attorney which were denied."[4]   See id.   The Complaint specifies
that,

> [o]n April 30, 2007, [Plaintiff] was transported . . .
> to [his] post-conviction hearing without any of his
> personal legal documents. . . .  The judge granted
> [him] an adjournment with a promise to order [NJSP] to
> release [Plaintiff's] legal documents . . . .
> [However,] after numerous phone calls and letters to
> the prison from the judge, [P]laintiff was still denied
> his legal materials . . . [He] suffered real harm
> because he was unable to submit his pro[]se brief,
> which delayed his [post-conviction relief] process.
> Also, denial of legal assistance from paralegal made it
> impossible for [P]laintiff to complete his legal
> obligations.

Compl. at 3.

Plaintiff, therefore, alleges that Defendant Ricci is liable
to Plaintiff because "she was . . . in charge [of] daily

---

3

It appears that Plaintiff refers to "paralegals" who are
inmates incarcerated at NJSP, also known as "jail-house lawyers."
See Compl. at 6-7 (stating that "[n]one of the civilian staff
charged with providing legal assistance possessed any legal
educational background, or knowledge of how to file an
administrative [grievance], § 1983 complaint or was capable of
rendering any legal assistance whatsoever to challenge the TCC
placement, nor assist [P]laintiff in any way legally," thus
suggesting that he sought legal assistance from jail-house lawyers
whom Plaintiff defines as "ILA," the term the Court presumes to be
an abbreviation signifying an "Inmate Legal Association").

4

It appears that Plaintiff's post-conviction application is
currently pending with the New Jersey Superior Court, Law Division
(rather than with the Appellate Division of the Superior Court),
and no post-conviction relief was denied to Plaintiff as of the
date of his filing of the instant Complaint, even though Plaintiff
uses the terms "post-conviction relief" and "appeal"
interchangeably.   See Compl. at 3.

operations and management of [NJSP], and of all rules, regulations and their enforcement.  See id. at 2.  In addition, Plaintiff asserts that Defendant Ricci "knowingly exhibited deliberate indifference by refusing to address [P]laintiff's administrative [grievances] concerning the deprivation of legal assistance."  See id. at 3.  Plaintiff similarly asserts that Defendants Kendall "exhibited deliberate indifference . . . by responding to [P]laintiff's administrative [grievances with the statement,] 'you are appropriately housed [at SHU],'" and also by "failing to address . . . [P]laintiff's [claim] that [the investigating officers were] in possession of information exculpating [P]laintiff" and, thus, to release him from SHU in a speedier fashion.[5]  See id.

Plaintiff further alleges that Defendants Magginis, Harrison and "John Doe" unduly ignored the fact that Plaintiff had "no history of disciplinary infractions and no record of job related problems," as well as Plaintiff's explanations of "the fact that there was no evidence to support" the finding that Plaintiff was guilty of any disciplinary infractions validating any sanctions against Plaintiff.  In addition, with respect to Defendant Magginis, Plaintiff asserts that, "[a]fter the dismissal of the disciplinary charge . . . , rather than releas[ing] Plaintiff,

---

[5]

The Complaint states that on May 23, 2007, officials at NJSP charged him with a disciplinary infraction, and the charge was dismissed on May 30, 2007.  See id. at 2.

[Maginnis] placed [him] on TCC and [in SHU] for 6 more days as retaliation for the [finding made at Plaintiff's administrative hearing which resulted in] dismissal of the [disciplinary] charge" made against Plaintiff.  Id. at 4.

Finally, Plaintiff maintains that Defendant Hayman also violated Plaintiff's civil rights "by virtue of the fact that he possessed the authority to intervene and remedy [P]laintiff's TCC placement . . . but . . . acted deliberately indifferent rather than remedying the matter."  Id. at 5.

Plaintiff seeks, inter alia, the following relief:[6] (1) "[d]eclaratory judgment that all [D]efendants . . . violated [his] rights under the 8th and 14th Amendments . . . , and shall immediately cease such practices"; (2) "monetary damages in the amount of $100,000.00 dollars for pain and suffering,[7] and

---

[6]

In addition to relief listed in this Opinion, Plaintiff seeks injunctive relief (such as "preventing [D]efendants from in anyway retaliating against or punishing [P]laintiff for . . . filing [his] complaint" with the Court), asserting that he will have no remedy at law if he is disciplined in retaliation. Compl. at 8. Plaintiff, however, cannot seek relief for a speculative injury, and his Complaint indicates neither that Plaintiff is in imminent danger of retaliation nor that there is even any likelihood of such retaliation. See generally, Compl. Moreover, if Plaintiff is retaliated in violation of his First Amendment right, Plaintiff may seek and obtain remedy at law in the form of monetary damages.

[7]

Plaintiff's Complaint is ambiguous as to whether Plaintiff seeks $100,000 from each Defendant individually or from Defendants jointly and severally. See Compl. at 7 (seeking "individual[] and collective[] monetary damages").

punitive damages accordingly.  Also $25.00 for each of the 94 days spent on TCC status"; and (3) return of Plaintiff's "diskette which contains an abundance of his legal records important to his current [post-conviction proceedings]."  <u>Id.</u> at 7-8.

## II.   <u>STANDARD FOR SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding <u>in forma pauperis</u> or a prisoner seeks redress against a governmental employee or entity.  <u>See</u> 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to <u>sua sponte</u> dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  <u>Id.</u>

"A document filed <u>pro se</u> is to be liberally construed, and a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted); <u>see also</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 127 S. Ct. at 2200 (citations and internal quotation marks omitted). As the Court of Appeals recently explained, although "there are reasonable inferences apart from [a constitutional violation] that could be drawn from the complaint . . . the fact that such inferences may be drawn is proof that the dismissal was premature.  The appellants have met their obligation to provide grounds for their entitlement to relief by presenting factual allegations sufficient to raise their right to relief above a speculative level." Stevenson v. Carroll, 495 F.3d at 65-67.

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Thomas v. Independence Twp., 463 F.3d 285,

296-97 (3d Cir. 2006); Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).  However, a court should not dismiss a complaint with prejudice for failure to state a claim without providing leave to amend, unless it finds bad faith, undue delay, prejudice to defendants, or futility.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

## III.  **DISCUSSION**

Federal courts are courts of limited jurisdiction.  See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of

> any State or Territory . . . subjects, or
> causes to be subjected, any citizen of the
> United States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable
> to the party injured in an action at law,
> suit in equity, or other proper proceeding
> for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

### A.   SHU CONFINEMENT

#### 1.   Due Process Aspect: the Fact of SHU Confinement

The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides:  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Fuentes v. Shevin, 407 U.S. 67 (1972).  Only if the answer is in the affirmative, must a court determine the scope of

10

the process that is due.  See Morrissey v. Brewer, 408 U.S. 471 (1972).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' . . . , or it may arise from an expectation or interest created by state laws or policies." Wilkinson, 545 U.S. at 221 (citations omitted); see also Sandin v. Conner, 515 U.S. 472, 483-84 (1995). However, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin, 515 U.S. at 478.  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Vitek v. Jones, 445 U.S. 480, 493 (1980).  Accordingly, a convicted inmate like Plaintiff has no liberty interest arising by force of the Due Process Clause itself "in avoiding transfer to more adverse conditions of confinement." Wilkinson, 545 U.S. at 221; see also Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242.

While "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations,"

<u>Wilkinson</u>, 545 U.S. at 222, which impose "atypical and
significant hardship on the inmate in relation to the ordinary
incidents of prison life," <u>Sandin</u>, 515 U.S. at 484, the <u>Sandin</u>
Court explained,

> [a] discipline in segregated confinement did
> not present the type of atypical, significant
> deprivation in which a state might
> conceivably create a liberty interest.

<u>Sandin</u>, 515 U.S. at 486 (footnote omitted).

As the Court of Appeals for the Third Circuit explained,
"the baseline for determining what is 'atypical and significant'
- the 'ordinary incidents of prison life' is ascertained by what
a sentenced inmate may reasonably expect to encounter as a result
of his or her conviction in accordance with due process of law."
<u>Griffin v. Vaughn</u>, 112 F.3d 703, 706 (3d Cir. 1997).  "In
deciding whether a protected liberty interest exists under
<u>Sandin</u>, [a court] consider[s] the *duration of the . . .
confinement and the conditions of that confinement in relation to
other prison conditions*."  <u>Mitchell v. Horn</u>, 318 F.3d 523, 532
(3d Cir. 2003) (emphasis supplied).  The United States Court of
Appeals for the Third Circuit has applied <u>Sandin</u> in several
cases.  For example, in <u>Griffin</u>, 112 F.3d at 706, the Court ruled
that 15 months in administrative segregation did not impose an
atypical and significant hardship on a Pennsylvania inmate, <u>cf.</u>
<u>Fraise v. Terhune</u>, 283 F.3d 506, 522-23 (3d Cir. 2002) ("Although
inmates who are transferred to the [Security Threat Group

Management Unit (hereinafter "STGMU")] face additional restrictions . . . the transfer to the STGMU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life"), but in <u>Shoats v. Horn</u>, 213 F.3d 140, 144 (3d Cir. 2000), the Court found that a Pennsylvania inmate had a liberty interest in avoiding *eight years* in solitary confinement, which consisted of confinement in a cell for 23 hours per day for five days a week, and 24 hours per day for two days a week, deprivation of all contact with family and other inmates, and denial of access to all organizational activities, with no prospect of release.  Applying <u>Sandin</u>, this Court holds that the fact of Plaintiff's three-month SHU confinement did not impose an atypical and significant hardship.  <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 654 (3d Cir. 2002) (seven months of disciplinary detention "do[] not . . . violate a protected liberty interest as defined in <u>Sandin</u>"); <u>Torres v. Fauver</u>, 292 F.3d 141, 151-52 (3d Cir. 2002) (administrative segregation for 120 days was not atypical treatment in New Jersey prisons).

**2.   Eighth Amendment Aspect: Conditions of Confinement**

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement.  The Constitution, however, "does not mandate comfortable prisons," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981), and prison officials must merely ensure

13

that inmates receive adequate food, clothing, shelter, and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The objective component mandates that "only those deprivations denying 'the *minimal* civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Helling, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (emphasis supplied), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety, Rhodes v. Chapman, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and (2) the subjective component by demonstrating that

prison officials knew of such substandard conditions or treatment
and "acted or failed to act with deliberate indifference to a
substantial risk of harm to inmate health or safety." <u>Ingalls v.
Florio</u>, 968 F. Supp. 193, 198 (D.N.J. 1997).

### a.   Bathing Ritual, Linens and Laundry, Etc.

Plaintiff asserts that, for the period of 55 days, he "was
not granted a complete overnight bag [<u>i.e.</u>, he] was not supplied
with basic [bathing] necessities such as shower shoes, lotion,
vaseline, shampoo and other necessary items to properly bathe."
<u>See</u> Compl. at 5-6.  In addition, the Complaint states that,
during his SHU period, "Plaintiff was . . . deprived of . . .
daily change of clothing and bed sheets, laundry," as well as a
"bath" towel and "cosmetics."  <u>See</u> <u>id.</u> at 3.

Such allegations fail to state a claim upon which relief may
be granted.  It appears from the face of the Complaint that
Plaintiff was permitted to take showers, was given a set of bed
linens and adequate clothing, and had access to some cloth (to
dry his body after taking showers), in addition to soap to wash
his body and hair.  Although Plaintiff might have found the items
available to him insufficient for his preferred ritual of "proper
bathing," Plaintiff was not denied of life's necessities within
the meaning of the United States Constitution by having no access
to lotions, cosmetics, shampoo, bath slippers, or a large-size
towel for 55 days; and his dissatisfaction with the lack of daily

changed bed linens or clothing, or his disappointment over insufficient frequency of the laundry services cannot qualify as a claim of constitutional magnitude.

Since the Complaint alleges neither "extreme deprivations" satisfying the objective component nor any known harm (that befell Plaintiff as a result of the aforesaid limitations)[8] satisfying the subjective component, these claims will be dismissed.  See Miller v. Brown, 2007 U.S. Dist. LEXIS 46472 (D.N.J. June 26, 2007) ("While any person's desire for spotless cleaning, perfect washing facilities and weekly laundry service is understandable, lack of such niceties cannot amount to a violation of constitutional magnitude. . . . [E]ven a complete denial of showers does not rise to the level of an Eighth Amendment violation.  Similarly, unclean cells and limitation of laundry service cannot amount to an Eighth Amendment violation, unless the plaintiff suffered an actual serious physical injury as a result of unsanitary conditions") (citing Gay v. Shannon, 211 Fed. Appx. 113, 116 (3d Cir. 2006); Moultrie v. Oxley, 2007 U.S. Dist. LEXIS 34439, at *19-22 (D.N.J. May 10, 2007); Hammock v. Bebow, 2005 U.S. Dist. LEXIS 36702 (M.D. Pa. Aug. 30, 2005)); see also Isby v. Clark, 1997 U.S. Dist. LEXIS 11391 (N.D. Ind.

---

[8]     Plaintiff asserts neither that he suffered from any severe disease because he was unable to, e.g., moisturize his skin after showers, nor that the prison officials knew of--but ignored--the risk of such disease.  See generally, Compl.

June 18, 1997) (an inmate's Eighth Amendment rights were not violated if he was provided merely with a bar of soap, a toothbrush, toothpaste, and a washcloth).

>           **b.    Lack of Visitation and Telephone Privileges**

The Complaint also alleges that, during his SHU period, Plaintiff was denied visitation and telephone contacts with his family members.  However, loss of privileges, in general, does not amount to infliction of cruel and unusual punishment; and loss of visitation and telephone privileges is no exception to this rule.  See <u>Overton v. Bazzetta</u>, 539 U.S. 126 (2003) (withdrawal of visitation privileges for at least two years was not a dramatic departure from accepted standards for conditions of confinement, nor did such regulation create inhumane prison conditions, or deprive the inmate of basic necessities); <u>accord Cook v. Warden, FCI Fort Dix</u>, 2005 U.S. Dist. LEXIS 33803 (D.N.J. Dec. 16, 2005) (same); <u>Leon v. Schaaff</u>, 2005 U.S. Dist. LEXIS 22462 (D.N.J. Sept. 23, 2005) (lost commissary and telephone privileges and placement in disciplinary confinement do not impose atypical and significant hardship upon an inmate).  In fact, it has been expressly established that the denial of such contacts "simply does not amount to the infliction of pain." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1113 (9th Cir. 1986) (citing <u>Rhodes</u>, 452 U.S. 337, and <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1254-55 (9th Cir. 1982)(holding that idleness and lack of

programs were not violations of the Eighth Amendment because they do not amount to infliction of pain)).[9]  Since visitation and telephone contacts do not qualify as minimal life's necessities-- such as adequate food, clothing, shelter, sanitation, medical care and personal safety--Plaintiff's allegations based on lack of such visits or telephone contacts fail to state a claim upon which relief may be granted and, therefore, will be dismissed.

> **B.   OTHER DUE PROCESS CLAIMS**
>
> **1.   Loss of Property**

While Plaintiff's Complaint states that Plaintiff's floppy disc is not in his possession, <u>see</u> Compl. at 8, the Complaint does not indicate that the disc was taken by a state official.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights *only* by a person who was acting under color of state law.  Thus, if Plaintiff meant to

---

[9]

    Moreover, even if the Court were to construe Plaintiff's claim of a loss of visitation rights under the First Amendment, such a claim would be without merit.  It has been held that "incarcerated persons maintain no right to simple physical association . . . grounded in the First Amendment." <u>Thorne v. Jones</u>, 765 F.2d 1270, 1274 (5th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1016 (1986).  The Supreme Court has stated that, "[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside the penal institution." <u>Jones v. North Carolina Prisoners' Labor Union</u>, 433 U.S. 119, 126 (1977).  While the denial of visitation may be harsh, "it is part of the penalty that criminals pay for their offenses against society." <u>Toussaint</u>, 801 F.2d at 1114 (citing <u>Rhodes</u>, 452 U.S. 337).

suggest that the disc was stolen by an inmate, Plaintiff's allegations fail to meet the threshold "color of law" requirement and should be dismissed for failure to state a claim upon which relief may be granted.

Moreover, even if this Court is to hypothesize that Plaintiff meant to state that his floppy disc was taken by a prison official while acting under color of law, Plaintiff's allegation still fails to present a cognizable federal claim.

The Due Process Clause prohibits a state or local government from depriving a person of property without providing due process of law.  See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  To analyze a due process claim, the Court conducts a "familiar two-part inquiry": the Court determines whether the Plaintiff "was deprived of a protected interest, and, if so, what process was his due."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); see also Holman v. Hilton, 712 F.2d 854, 858 (3d Cir. 1983).

Although Plaintiff has a property interest in his floppy disc, his due process claim nevertheless must fail as a matter of law if a state remedy provides all the process that is due.  See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Holman, 712 F.2d at 856; Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 421 n.12

(3d Cir. 2000); Zinermon v. Burch, 494 U.S. 113, 115 (1990). The New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1-1 et seq., provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison officials.  See Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp. 2d 405, 419 (D.N.J. 1998), aff'd, 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA is an available remedy providing all the process which is due, Plaintiff's loss of property claim must fail, and the Court is constrained to dismiss it pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2.   **Responses to Plaintiff's Administrative Grievances**

Similarly, Plaintiff's allegations that Defendants violated his constitutional rights when they did not respond to his administrative grievances fail to state a cognizable claim.[10] The Fourteenth Amendment does not guarantee inmates a right to an investigation or a response from prison officials as to administrative grievances (or to any replies by prison officials to Plaintiff's other complaints/demands of a grievance nature).

---

[10] Plaintiff's assertion that Defendant Maginnis violated Plaintiff's rights by stating that Plaintiff was "appropriately housed" at SHU during the period of 92 days does not amount to a claim, since Plaintiff was, in fact, appropriately housed.  See this Opinion, Part III(A) (discussing both the length of Plaintiff's SHU confinement and the conditions of his confinement).

See, e.g., Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, No. 94-6884, 1996 U.S. Dist. LEXIS 3418 at *2, n.1 (E.D. Pa. Mar. 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Brown v. G. P. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994).  "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."  Flick, 932 F.2d at 729.

Because there is no constitutional right to an effective grievance procedure and "'a state grievance procedure does not confer any substantive constitutional right upon prison inmates,'" Plaintiff's grievances-related claims must be dismissed for failure to state a claim upon which relief may be granted.  See Burnside v. Moser, 138 Fed. Appx. 414 (3d Cir. 2005) (quoting Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del 1995)); Gonzalez-Cifuentes v. U.S. Dep't Homeland Security, 2005 U.S. Dist. LEXIS 33072 at *39 (D.N.J. May 3, 2005)(dismissing inmate's lack of grievance procedure claim and stating that inmates are not constitutionally entitled to a grievance

procedure, and the state creation of a grievance procedure does not created a liberty interest requiring procedural protections under the Fourteenth Amendment).

### 3.   **Allegedly Improper Disciplinary Charge**

Plaintiff's Complaint also states allegations based on an allegedly improper disciplinary charge against him, which was eventually dismissed by NJSP officials as unsupported by evidence obtained during the pertinent iinvestigation.  "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) (citing Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate was eventually granted an "opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988)); see also Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural avenue meeting the three-element requirement outlined in Wolff, 418 U.S. at 558, the prisoner has not suffered a constitutional violation); Duncan v. Neas, No. 86-109, 1988 U.S. Dist. LEXIS 12534, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of

22

deprivation of a constitutionally protected liberty interest ... where procedural due process was provided").

Since Plaintiff's Complaint expressly acknowledges that: (1) Plaintiff was given an opportunity to rebut the charges against him during the interviews conducted by investigating officers, see Compl. at 3-7, and (2) the information obtained during the investigation led to a dismissal of the charge, see id., Plaintiff's allegations based on the entry of the charge should be dismissed for failure to state a claim upon which relief may be granted.

### C.   FIRST AMENDMENT AND RELATED CLAIMS

#### 1.   First Amendment: Retaliation Claim

Next, Plaintiff asserts that, after his disciplinary charge was dismissed, prison officials delayed his release from SHU into general prison population in retaliation for the fact of the administrative finding that the charge had to be dismissed.

The First Amendment offers protection for a wide variety of expressive activities.  See U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon an individual's rights under the First

Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that (1) he was engaged in protected activity; (2) he suffered an "adverse action" by government officials; and (3) there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225); see also Carter v. McGrady, 292 F.3d 152, 157 (3d Cir. 2002).  Here, the Complaint does not allege that Plaintiff was retaliated against because he engaged in a protected activity.  Rather, the alleged retaliation occurred as a result of his disciplinary acquittal, that is, a determination made by the prison officials themselves.  Consequently, Plaintiff's allegations fail to meet the threshold requirement of a retaliation claim and, therefore, will be dismissed with prejudice.

### 2.   **First Amendment: Free Exercise Claim**

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."  U.S. Const. amend. I.  However, as noted above, while "prisoners do not forfeit all constitutional protections," it is settled that "[t]he fact of confinement as well as the legitimate goals and policies of the penal

24

institution limits these retained constitutional rights." <u>Bell</u>,
441 U.S. at 545-546.  Moreover, in deciding an inmate's First
Amendment challenge, a court must recognize that "judgments
regarding prison security 'are peculiarly within the province and
professional expertise of corrections officials, and, in the
absence of substantial evidence in the record to indicate that
the officials have exaggerated their response to these
considerations, courts should ordinarily defer to their expert
judgment in such matters.'" <u>Turner v. Safley</u>, 482 U.S. 78, 86
(1987) (quoting <u>Pell v. Procunier</u>, 417 U.S. 817, 827 (1974)).

The Free Exercise Clause of the First Amendment prohibits
prison officials from denying an inmate "a reasonable opportunity
of pursuing his faith."[11]  <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 322 &
n.2 (1972).  For instance, the Court of Appeals for the Third
Circuit has held that, where an inmate's request for a special
diet was a sincerely-held religious belief, the inmate has
established a constitutionally protected interest under the First
Amendment, upon which the prison administration could not
unreasonably infringe absent a legitimate penological interest to
the contrary.  <u>See</u> <u>DeHart v. Horn</u>, 227 F.3d 47, 52-57 (3d Cir.

---

[11]    The mere assertion of a religious belief, however, does not
automatically trigger the Free Exercise Clause.  <u>See</u> <u>DeHart v.
Horn</u>, 227 F.3d 47, 51 (3d Cir. 2000).  Rather, the Free Exercise
Clause is implicated when "the beliefs avowed are (1) sincerely
held, and (2) religious in nature, in the claimant's scheme of
things." <u>Id.</u> (quoting <u>Africa v. Pennsylvania</u>, 662 F.2d 1025, 1030
(3d Cir. 1981)).

2000).  Thus, to establish that the denial of certain religious items or services violated his rights under the Free Exercise Clause, Plaintiff must show that the denial contravened a sincerely-held religious belief and was not reasonably related to a legitimate penological interest.  See Africa v. Pennsylvania, 662 F.2d 1025, 1030 (3d Cir. 1981), cert. denied, 456 U.S. 908 (1982).

Here, Plaintiff broadly complains that Defendants violated his First Amendment rights by denying him unspecified religious item(s) and *unspecified* religious service(s); indeed, Plaintiff does not provide the Court with any information about the nature of his religious beliefs, and does not identify either the item(s) or service(s) denied, or the specific request(s) that Plaintiff made to NJSP seeking to obtain these item(s)/service(s).  Therefore, as drafted, the Complaint fails to state a cognizable claim.  See, e.g., Freeman v. Tex. Dep't of Crim. Justice, 369 F.3d 854, 860-62 (5th Cir. 2004) (provision of worship services to only 5 major faith groups was reasonable under the Turner factors).  However, it appears that Plaintiff, if granted leave to amend his pleading, might be able to state facts which, if proven true, could amount to a viable § 1983 claim.  Therefore, the Court will dismiss Plaintiff's claims based on the Free Exercise Clause without prejudice and allow him to submit an amended complaint detailing the pertinent facts.

26

### 3.   **First Amendment: Freedom of Speech Claim**

As for plaintiff's First Amendment "free speech" mail claim,

> [u]nder the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail."  Id.  [Thus,] a prisoner's right to receive and send mail . . . may be regulated.  See Davidson v. Mann, 129 F.3d 700, 702 (2d Cir. 1997) (upholding the validity of a prison regulation limiting inmates' purchases of stamps for non-legal mail).  Such regulation "'is valid if it is reasonably related to legitimate penological interests.'"  Rodriguez v. James, 823 F.2d 8, 12 (2d Cir. 1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006); see also Tinsley v. Giorla, 2006 U.S. Dist. LEXIS 59935, at *13 (E.D. Pa. Aug. 22, 2006) (same).  For instance, in Johnson, prison officials prevented certain inmates from receiving stamps in the mail and provided that they could receive only one free stamp per month for personal use.  One of the inmates complained that he did not have sufficient funds to purchase stamps to write letters to his family.  The Court of Appeals for the Second Circuit affirmed the decision of the district court, which found that the inmate did not have a constitutional right to free postage for non-legal mail, and the prison directive regulating possession of stamps in the prison was reasonably related to a legitimate penological interest.  See Johnson, 445 F.3d 532.

Similar to the facts presented in <u>Johnson</u>, Plaintiff here alleges that he was deprived of postage to write to his family, but fails to state whether he requested but was denied use of the postage which was already in his own possession at the time of him placement in SHU; thus, it appears that the Complaint alleges denial of free postage.  <u>See</u> <u>generally</u>, Compl.  If so, Plaintiff's "free speech" allegations fail to state a cognizable claim and should be dismissed.  <u>See</u> <u>Johnson</u>, 445 F.3d 532.  However, it is plausible that Plaintiff, if granted leave to amend his pleading, might allege facts indicating that he expressly requested but was denied, without any legitimate penological interest, use of postage, which had already been in his own possession.  Therefore, the Court will dismiss Plaintiff's "free speech" claim without prejudice and allow him to submit an amended complaint stating the relevant facts, if available.

### 4.  <u>First and Fourteenth Amendments: Access to Courts</u>

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  <u>See</u> <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress

28

for violations of their constitutional rights.  See Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis omitted).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was

*dismissed* for failure to satisfy some technical requirement . . . . Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was *unable to file even a complaint*." Lewis, 518 U.S. at 351 (emphasis supplied).

In the case at bar, Plaintiff alleges that he was denied telephone contact with his post-conviction relief attorney and that such a lack of contact caused "delay" in his post-conviction process. In addition, Plaintiff alleges that he could not submit his pro se brief because his SHU status prevented him from obtaining any assistance from inmates-paralegals.

Inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful access to the courts in violation of the Fourteenth Amendment. See Inmates of Allegheny County Jail v. Wecht, 565 F. Supp. 1278, 1284 (E.D. Pa. 1983); Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979). Nonetheless, inmates' rights to communicate, even with legal counsel, are not unlimited. See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992). Thus, prison officials can limit communications, particularly telephone communications, to ensure safety, security, and the orderly operations of their institution. See Griffin-El v. MCI

30

Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).

Here, Plaintiff alleges that he was denied *all* contact with his counsel.  Taking Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently pled the impairment prong of his claim.  See Bounds, 430 U.S. at 828.  However, the Complaint does not allege any facts indicating that Plaintiff suffered "actual injury" as a result of such a lack of communication, see Lewis, 518 U.S. at 348-51, because the sole injury asserted by Plaintiff is a "delay" in the filing of his post-conviction relief.  Because the Complaint does not assert that Plaintiff suffered any injury other than waiting for his post-conviction application to be filed--e.g., he does not state that the application was dismissed for failure to satisfy the state statute of limitations requirement, accord id. at 351--Plaintiff has failed to allege that he suffered actionable harm as a result of his lack of contact with his post-conviction counsel. Nevertheless, it appears that Plaintiff, if granted leave to amend his pleading, might be able to cure this deficiency and clarify his understanding of the term "delay" in a fashion sufficient to state a claim.  The Court, therefore, will dismiss this claim without prejudice.

Plaintiff's allegations based on his inability to file his pro se brief (to supplement the one filed by his counsel) are

similarly insufficient as presently pled.  Significantly, the officials at NJSP were not obligated to provide Plaintiff with legal assistance *for the purposes of drafting his legal documents*.  All that is required is that inmates have access to a prison paralegal or paging system if they cannot personally obtain from the prison law library certain legal materials they wish to utilize in their legal papers.  See <u>Abdul-Akbar v. Watson</u>, 4 F.3d 195, 203 (3d Cir. 1993) (in the case of segregated prisoners who do not have access to an institution's main law library, the law requires they must have some means by which documents and materials can be identified and furnished to them in a timely fashion).[12]

Here, the Complaint does not assert that Plaintiff was denied all access to NJSP law library or to any reference/paging

---

[12]
    The Court notes that it is uncertain whether the holding of <u>Abdul-Akbar</u> is altogether applicable to Plaintiff's circumstances. Notably, the  <u>Abdul-Akbar</u> plaintiffs were denied paralegal/paging assistance in preparing federal habeas corpus petitions and civil rights complaints.  In contrast, Plaintiff was given--and actually availed himself of--assistance of legal counsel in filing his post-conviction relief application.  Thus, if this Court is to presume that, due to this distinction, the holding of <u>Abdul-Akbar</u> is inapplicable to Plaintiff's circumstances (because Plaintiff could obtain identification of the legal materials he needed for his <u>pro se</u> brief from his counsel and request such materials from the NJSP law library, <u>see</u> <u>Gibbs v. Hopkins</u>, 10 F.3d 373, 379-80 (6th Cir. 1993) (allowing inmate to amend complaint to allege that there were no reasonable alternatives for access to courts other than jailhouse lawyers)), Plaintiff's allegations that he had no contact with NJSP paralegals are effectively identical to--and should be merged with--his claim of denied contact with his post-conviction relief counsel.

services.  Moreover, even if the Court is to presume that
Plaintiff wished to so allege, his mere statement that "denial of
legal assistance from paralegal made it impossible for
[P]laintiff to complete his legal obligations" does not assert
that he suffered an actual injury, since Plaintiff had *no
obligation* to submit his <u>pro</u> <u>se</u> brief to supplement the one filed
by his counsel.  In fact, Plaintiff may meet the "actual injury"
prong of this claim only if hiss post-conviction relief counsel
failed to include in the counsel's brief a claim that: (1)
Plaintiff actually intended to assert in his <u>pro</u> <u>se</u> brief; and
(2) could realistically result in Plaintiff obtaining post-
conviction relief *other* than that secured through the efforts of
his post-conviction relief counsel.  <u>See</u> <u>Christopher v. Harbury</u>,
536 U.S. 402, 415 (2002) (finding that, in context of judicial
access claim, inmate must show that he could not present his
claim and that predicate claim was a non-frivolous, arguable
legal claim, and more than "just a hope").

While it is unclear whether Plaintiff, at the instant
juncture, could allege sufficient facts in support of his claim
based on his lack of access to NJSP paralegals,[13] the Court

---

[13]

It appears that Plaintiff's claim, even if amended, is likely
to be speculative because Plaintiff's post-conviction proceedings
have not concluded as of the date of the issuance of this Opinion
and accompanying Order.  Thus, it is unclear what remedy, if any,
would be secured by the efforts of Plaintiff's post-conviction
(continued...)

cannot rule out the possibility that Plaintiff, if granted leave to amend his pleading, might be able to cure this deficiency and detail the legal claim(s) that he intended but could not state in his <u>pro se</u> brief and that could have yielded relief different from that obtained (or obtainable) by his post-conviction relief counsel.

The Court, therefore, will dismiss Plaintiff's claims based on lack of contact with NJSP paralegals without prejudice.

**D.   CLAIMS AGAINST CERTAIN OFFICERS**

While the Court will dismiss Plaintiff's First Amendment claims discussed in Part III(C)(2)-(4) of this Opinion without prejudice and grant him leave to amend the Complaint, the Court will dismiss these claims with prejudice against Defendants Hayman and Ricci.

It is well established that supervisory liability cannot be imposed under § 1983 on a <u>respondeat superior</u> theory.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of <u>respondeat superior</u>.'"  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d

---

[13](...continued)
relief counsel.

1195, 1207 (3d Cir. 1988)).  Personal involvement can be shown
through allegations that a defendant had *actual* knowledge of the
deprivation of a plaintiff's constitutional rights.  <u>See</u> <u>id.</u>;
<u>Monell</u>, 436 U.S. at 694-95.  Supervisory liability may attach if
the supervisor implemented deficient policies and was
deliberately indifferent to the resulting risk, or the
supervisor's actions and inactions were "the moving force" behind
the harm suffered by the plaintiff.  <u>See</u> <u>Sample v. Diecks</u>, 885
F.2d 1099, 1117-118 (3d Cir. 1989); <u>see</u> <u>also</u> <u>City of Canton v.</u>
<u>Harris</u>, 489 U.S. 378 (1989); <u>Heggenmiller v. Edna Mahan Corr.</u>
<u>Inst. for Women</u>, No. 04-1786, 128 Fed. Appx. 240 (3d Cir. 2005).

     In the case at bar, Plaintiff alleges supervisory liability
of Defendants Hayman and Ricci.  However, Plaintiff's allegations
are limited only to bald assertions that these Defendants "*should*
*have* known" or "*should have* prevented" his SHU confinement or
administrative investigation of Plaintiff's disciplinary charge,
or *should have* sped up the investigative process.  Such
assertions do not suggest that these Defendants were personally
involved in, or even knew of, the limitations associated with
Plaintiff's SHU confinement.  Consequently, Plaintiff has failed
to state any cognizable constitutional claim against Defendants
Hayman and Ricci, and the Court thus will dismiss those claims
asserted against Defendants Hayman and Ricci.

Similarly, the Court the Court will dismiss Plaintiff's First Amendment claims against Magginis, Harrison and "John Doe," NJSP investigating officers, since the Complaint makes clear that the alleged wrongdoings of these Defendants were limited to the investigation and preparation of reports associated with Plaintiff's placement and detention in SHU confinement and had no connection with the decisions to deny Plaintiff religious items/services, telephone calls to his post-conviction relief attorney, contacts with NJSP paralegal/paging system or use of postage for private matters. See generally, Compl.

Personal involvement by a defendant is an indispensable element of a valid legal claim; such personal involvement may exist only where the named defendant violated the plaintiff's rights either by executing the acts at issue himself or herself, or by directing others to violate the plaintiff's rights (or by tolerating past or ongoing misbehavior of subordinates while having both supervisory power and knowledge of these constitutional violations). See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Conversely, where no personal involvement by the defendant in the alleged wrong is asserted, the plaintiff's claim against that defendant is subject to dismissal. See Rode, 845 F.2d at 1207. Because Plaintiff's allegations against the NJSP investigating officers are not

36

related to the claims that might, following Plaintiff's amendment of his instant Complaint, prove viable due to a lack of personal involvement, his allegations against Defendants Magginis, Harrison and "John Doe" will be dismissed with prejudice.[14]

## IV.   CONCLUSION

In view of the foregoing, the Court will: (1) grant Plaintiff's application to proceed in forma pauperis; (2) terminate Defendants Hayman, Ricci, Magginis, Harrison and "John Doe" as Defendants in this action; (3) dismiss, with prejudice, all of Plaintiff's claims not based on the First Amendment, as well as Plaintiff's First Amendment claims that assert retaliation against him or are based on lack of visitation; and (4) dismiss, without prejudice, all of Plaintiff's remaining First Amendment claims, discussed in Part III(C)(2)-(4) of this Opinion, and grant him leave to amend his instant pleading with respect to the aforesaid claims within the timeframe set forth in the Order accompanying this Opinion.

---

[14]

Because it appears from Plaintiff's Complaint that Plaintiff discussed the fact of his SHU confinement with Defendant Kendall, the Court cannot rule out the possibility that Plaintiff might clarify in his amended complaint the nature of these interactions such that it may be ascertained that Defendant Kendall has personal knowledge of the facts underlying his potentially viable First Amendment claims.

/s/ Joel A. Pisano
**JOEL A. PISANO**
**United States District Judge**

Dated:    December 3, 2007