**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ASHLEY GEORGES,

       Plaintiff,

  v.

MICHELLE R. RICCI, et al.,

       Defendants.

Civil No. 07-5576 (JAP)

OPINION

**APPEARANCES:**

    ASHLEY GEORGES, #429230, Plaintiff Pro Se
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey  08625-0861

**Joel A. Pisano, District Judge**

This matter is before the Court upon submission of Plaintiff ASHLEY GEORGES's (hereinafter "Plaintiff") motions for reconsideration, for a stay of dismissal, and for leave to file an amended complaint.

On October 11, 2007, Plaintiff submitted for filing his complaint setting forth a multitude of claims. See Docket Entry No. 1. On December 4, 2007, this Court screened Plaintiff's complaint for sua sponte dismissal and determined that certain claims stated in the complaint appeared to be wholly meritless for the purposes of § 1983, while the remaining claims, although paraphrased in terms insufficient to state a § 1983 claim were, nonetheless, articulated in such a fashion as to indicate that

Plaintiff could cure the deficiencies of his pleading if allowed to submit an amended complaint. <u>See</u> Docket Entries Nos. 2 and 3. Consequently, this Court dismissed Plaintiff's claims against certain prison officials and investigating officers, as well as all of Plaintiff's claims that were not based on the First Amendment. <u>See</u> <u>id.</u> As for Plaintiff's First Amendment allegations, the Court dismissed with prejudice Plaintiff's First Amendment claims that asserted retaliation against him or were based on lack of visitation. <u>See</u> <u>id.</u> The Court, however, dismissed all of Plaintiff's remaining First Amendment claims *without* prejudice and granted him leave to amend his complaint with respect to those claims. <u>See</u> <u>id.</u>

On January 8, 2008, the Clerk received from Plaintiff: (1) his "Motion for Leave to Amend and Supplement the Facts in Support of Plaintiff's Claims in his Complaint"; (2) his "Motion for Reconsideration of the Order Dismissing Plaintiff's Claims with Prejudice";(3) his "Notice of Motion for a Stay on Claim Dismissed Without Prejudice Pending Motion for Reconsideration of the Order Dismissing the Other Claims with Prejudice"; and (4) his "Letter-brief in Support of Reconsideration," which included, <u>inter</u> <u>alia</u>, Plaintiff's statement of facts and arguments that Plaintiff deemed pertinent to his application.[1]

---

[1] It appears that Plaintiff's two motions and one notice of motion aimed to suggest that, in light of the fact that Plaintiff
(continued...)

Plaintiff's latest submissions, although without specifically elaborating on Plaintiff's facts, include certain statements that appear to be a mixture of "hints" as to what those facts might be and Plaintiff's arguments as to why the Court erred in its previous decision.  <u>See</u> Dockets Entries Nos. 5-7.  Unfortunately, Plaintiff's submissions are organized in a manner that his statements do not clearly correspond to the issues addressed by this Court's previous decision.  Lacking ability to create a comprehensive grid relating Plaintiff's latest statements to the legal issues previously addressed by the Court, the Court believes that the most efficient way of examining Plaintiff's more recent allegations would be of examining them <u>seriatum</u>.

---

[1](...continued)
was directed to submit an amended complaint elaborating on the facts of his claims dismissed without prejudice, Plaintiff would prefer to submit a single omnibus amended complaint elaborating on the fact of those claims, as well as claims dismissed with prejudice.  Consequently, this Court construes: (a) Plaintiff's "Notice of Motion for a Stay on Claim Dismissed Without Prejudice Pending Motion for Reconsideration of the Order Dismissing the Other Claims with Prejudice" as an application for extension of time to elaborate on the facts of Plaintiff's claims dismissed without prejudice, and (b) the remaining documents as Plaintiff's application to submit an amended complaint with respect to his claims dismissed with prejudice.  Plaintiff's request to extension of time appears to be reasonable, since it would be efficient for Plaintiff and this Court to address simultaneously all of Plaintiff's amended allegations.  Moreover, in light of the fact that Plaintiff's original complaint was not served, this Court finds no reason to prevent Plaintiff from amending his original pleading.  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman v. Davis, 371 U.S. 178, 182-83 (1962).

1.  Plaintiff first asserts that his 94-day-long transfer from general prison population to a cell located within the Temporary Closed Custody ("TCC") unit "was in violation of due process, in that it violated the Department of Corrections['] own standard promulgated in N.J.S.A. [§] 10A:5-7.1." Docket Entry No. 5-2, at 7; see also id. at 2. This matter was already addressed by the Court in its previous Opinion, see Docket Entry No. 2, at 10-13 (explaining that, since a prisoner has no liberty interest in remaining in general prison population, and three months of TCC confinement cannot amount to an atypical and significant hardship triggering Plaintiff's due process rights). Plaintiff's now-entered reliance on N.J.S.A. [§] 10A:5-7.1 does not alter this Court's due process analysis, since state law claims cannot be repackaged into constitutional due process claims.[2] "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause," State v. Johnson, 90 N.J. Super. 105, 10 (N.J. Super. Ct. App. Div. 1965), and "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v.

---

[2] The Court enters no opinion as to whether the actions of the named prison officials amounted to a violation of N.J.S.A. [§] 10A:5-7.1.

>  Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985). Plaintiff's latest submissions do not indicate that Plaintiff has any facts beyond those already stated in his original complaint to support his due process claims based on the fact of his three-month TCC confinement. Consequently, these claims remain dismissed with prejudice, and Plaintiff need not elaborate on them any further in his amended complaint, if such amended complaint is submitted.

2. Plaintiff then alleges that his placement in TCC confinement was in violation of his Eighth Amendment rights because "other prisoners [were] allowed a shower every three days, change of clothing, change of sheets weekly, cosmetics, hygiene products, and legal access [to] inmate paralegals." Docket Entry No. 5-2, at 8-9; see also id. at 2. It appears that Plaintiff's statement conflates different claims.

   a. Plaintiff's reference to showers, change of clothing, bedding, etc. relates to Plaintiff's Eighth Amendment conditions of confinement claims. This Court explained the applicable test to Plaintiff in its prior Opinion, see Docket Entry No. 2, at 13-15. This "deliberate indifference to deprivation of minimal life necessities" test applies regardless of whether the deprivation period occurred while an inmate is in TCC confinement (or any other form of restrictive confinement) or in general

5

    population. Plaintiff's original allegations were based on the fact that Plaintiff was lacking such items as shower shoes, lotion, vaseline, etc., which Plaintiff needed to "properly bathe," as well as on a lack of "daily change of clothing and bed sheets." See id. at 15. As the Court previously explained, the aforesaid items do not qualify as such life necessities that deprivation of these items could amount to a claim of constitutional magnitude. See id. at 15-17. Plaintiff's latest submissions, however, suggest that Plaintiff might have been denied showers and items of *basic* hygiene, or denied change of bedding/clothing for long periods of time, possibly even for the entirety of his three-month TCC confinement. Although these new statements are vastly different from Plaintiff's statements originally made, this Court cannot rule out the possibility that Plaintiff's initial allegations as to lack of "proper" bathing or daily changes of clothing and bedding were a result of Plaintiff's lack of legal savvy. Therefore, this Court finds no reason to refuse Plaintiff's request to elaborate, in his amended complaint, on the facts of his conditions of confinement.

b. Plaintiff's comparison of his situation to those of other inmates suggests that Plaintiff might now be wishing to

assert an equal protection claim, <u>i.e.</u>, a claim qualitatively different from his above-discussed Eighth Amendment conditions-of-confinement claim. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly-situated be treated alike. <u>See City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," <u>Washington v. Davis</u>, 426 U.S. 229, 239 (1976), or any other suspect classification. <u>See</u>, <u>e.g.</u>, <u>Bakke v. California Bd. of Regents</u>, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination"). Thus, although lawful imprisonment entails the necessary withdrawal or limitation of many rights and privileges, <u>see</u> <u>Pell v.</u>

7

Procunier, 417 U.S. 817, 822 (1974), inmates have a constitutional right to be free from discrimination based on race and other "suspect classifications," such as alienage or country of origin. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir. 2004); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir. 1980). Here, Plaintiff's Equal Protection claim is limited solely to the assertion that the other inmates were provided with more frequent showers and change of clothing. Plaintiff's allegations are race-, gender- or ethnicity-neutral since Plaintiff's Complaint does not indicate that inmates of race, ethnicity/gender other than that of Plaintiff's were consistently allowed better conditions of confinement while inmates of Plaintiff's race, ethnicity/gender were consistently subjected to worse conditions because of their suspect classification. Therefore, Plaintiff's Complaint failed to allege any circumstances requiring this Court to apply the heightened level of scrutiny. Since the mode of TCC confinement "neither burdens a fundamental right nor targets a suspect class," this Court will uphold the procedures employed by the prison officials so long as these procedures bears a "rational relation to some legitimate end," Romer v. Evans, 517 U.S. 620, 631 (1996), and because there could be infinite

8

    reasons for stricter TCC rules, in comparison with the rules applied to inmates in general population, imposition of such stricter rules does not violate Plaintiff's Equal Protection rights. Therefore, Plaintiff's equal protection allegations stated in his latest submissions fail to state a claim, will be dismissed with prejudice, and Plaintiff need not elaborate on them in his amended complaint.[3]

c. Plaintiff's reference to his lack of access to inmate-paralegals, similarly, bears no relevance to Plaintiff's Eighth Amendment rights. Rather, this reference implicates Plaintiff's First and Fourteenth Amendments access-to-courts rights. This Court explained the applicable legal test to Plaintiff in its previous Opinion, see Docket Entry No. 2, at 28-31, and detailed the application of this test to Plaintiff's claims related to paralegal assistance. See id. at 31-33. Moreover, the Court expressly directed Plaintiff to amend his pleadings clarifying the facts of his claims to that effect. See id. at 33-34. Consequently, Plaintiff's application for leave to amend his pleading in that

---

[3] The Court expressly draws Plaintiff's attention to the fact that his individualized Eighth Amendment conditions-of-confinement challenges are not precluded by this Court's finding that the prison officials' utilization of a stricter TCC regime did not violate the Equal Protection Clause of the Fourteenth Amendment.

       fashion is wholly redundant, and this Court, being unable to do any better for Plaintiff, reiterates herein its previous finding that Plaintiff's claims based on the alleged lack of access to inmates paralegals are dismissed without prejudice to Plaintiff's submission of his amended complaint detailing the pertinent facts.

3. Next, Plaintiff asserts that his placement in TCC "exceeded the permissible 72 hours" in violation of his due process rights, and it was done "without any hearing or an opportunity to be heard." Docket Entry No. 5-2, at 11-12. Again, Plaintiff conflates two separate issues. Plaintiff has no constitutional liberty in remaining in the prison's general population. See Docket Entry No. 2, at 8-9. As this Court already explained, (a) Plaintiff's three-month-long placement in TCC confinement has no cognizable due process aspect, although the TCC environment that Plaintiff experienced might give rise to a conditions-of-confinement claim; and (b) Plaintiff's being in TCC confinement in excess of a 72-hour limitation imposed by state regulation does not amount to a constitutional claim. Finally, as for Plaintiff's allegations that he did not have "any hearing or an opportunity to be heard," this claim is factually contradicted by Plaintiff's original complaint, as well as his latest submissions, where Plaintiff unambiguously alleged that he had a disciplinary

      hearing and, being provided with an opportunity to be heard, was successful in having his disciplinary charges dismissed. Therefore, Plaintiff's new allegations do not state a due process claim based on a lack of an administrative hearing.

4. Plaintiff's following statement suffers of a similar shortcoming. Plaintiff effectively restates his claim that the disciplinary charges against Plaintiff were based on insufficient evidence. <u>See</u> Docket Entry No. 5-2, at 9. The Court already addressed this allegation in its prior opinion, <u>see</u> Docket Entry No. 2, at 22-23, explaining to Plaintiff that, because Plaintiff was given an opportunity to rebut the wrongful charges, and these charges were dismissed by prison officials who relied on correct and truthful information, Plaintiff's allegations did not state a due process claim.

5. After making the aforesaid numerous allegations, Plaintiff also recites his previous claims that he was wrongfully denied visitation, personal telephone calls and religious services. <u>See</u> Docket Entry No. 5-2, at 9. These allegations, which lack factual support, were addressed by this Court in its previous opinion, where the Court explained to Plaintiff that: (a) there is no constitutional right to visitation and personal phone calls and, therefore, Plaintiff's allegations to that effect do not state a cognizable constitutional claim, <u>see</u> Docket Entry No. 2, at 17-18; while (b) Plaintiff's

11

allegations of a denial of his free exercise rights, although factually insufficient as stated in his original complaint, might still amount to a sufficiently pled claim in the event Plaintiff is allowed to amend his pleadings. See Docket Entry No. 2, at 24-25. Hence, Plaintiff's mere recital of his disappointment with a three-month denial of visitation and telephone privileges does not indicate that Plaintiff may have any facts to offer to cure the deficiencies of these allegations. However, the Court cannot do any better for Plaintiff with regard to his free exercise claim than to reiterate the Court's invitation to Plaintiff to amend his complaint by stating the facts related to the prison officials' denial of Plaintiff's rights to practice his religious beliefs.

6.  Next, Plaintiff asserts that "his placement [in TCC confinement] was unjustified, and began to be solely punitive after the filing of [a prison grievance seeking] administrative remedies." Docket Entry No. 5-2, at 10. These allegations suggest that Plaintiff has a claim based on facts different from those asserted in his original complaint in respect of his First Amendment based retaliation claim. Plaintiff's original retaliation claim asserted that Defendants retaliated against Plaintiff because Defendants made a finding that acquitted Plaintiff of disciplinary

      charges. <u>See</u> Docket Entry No. 2, at 23-23. Those allegations could not amount to a cognizable constitutional claim. <u>See</u> <u>id.</u> at 24. By contrast, Plaintiff now suggests that he might be able to allege a retaliation claim where the retaliatory actions were taken by prison officials in response to Plaintiff's exercise of his free speech rights. This Court, therefore, sees no reason to refuse Plaintiff's request to elaborate, in his amended complaint, on the facts of his First Amendment retaliation claim.

7. Finally, Plaintiff reiterates his access-to-court claims. <u>See</u> Docket Entry No. 5-2, at 10. This Court already addressed these allegations and dismissed them without prejudice to Plaintiff's filing of an amended complaint elaborating on these claims. <u>See</u> Docket Entry No. 2, at 28-34. Therefore, Plaintiff's request to submit an amended complaint to elaborate on the facts underlying these allegations is wholly redundant: this Court cannot do any better for Plaintiff than to repeat its previous finding that Plaintiff may, indeed, submit an amended complaint clarifying the factual basis for his claims in accordance with the legal standard detailed by the Court in its previous opinion.

**CONCLUSION**

In view of the foregoing, the Court: (a) reiterates its previous finding that Plaintiff's due process claims based on the fact of his three-month-long TCC confinement, as well as those based on the administrative hearing won by Plaintiff, are dismissed with prejudice, same as Plaintiff's claims based on a lack of visitation and personal calls telephone privileges; (b) reiterates its previous findings that Plaintiff may, if he so wishes, supplement the statements made in his original complaint by filing an amended complaint elaborating on Plaintiff's First Amendment free exercise claim, free speech and access-to-courts claims. Finally, in addition to the foregoing, this Court will allow Plaintiff to elaborate, in his amended complaint, on the facts underlying Plaintiff's Eighth Amendment conditions-of-confinement claim, as well as on the facts underlying his First Amendment retaliation claim.[4]

/s/ Joel A. Pisano
**JOEL A. PISANO**
**United States District Judge**

Dated:   May 9, 2008

---

[4] The Court does not alter its findings as to the dismissal with prejudice of those claims that were examined in the Court's previous opinion and not implicated by Plaintiff's statements made in his latest submission.